[No. 34071. Department Two. April 25, 1957.]

MARSHALL K. CALLEN et al., Respondents, v. COCA COLA BOTTLING, INC., Appellant.[1]

[1]Reported in 310 P. (2d) 236.

*N. A. Pearson* and *Kenneth M. Elliott,* for appellant.

*Wright, Booth & Beresford* (*Paul M. Anderson,* of counsel), for respondents.

DONWORTH, J.—This action was brought by plaintiffs to recover damages for injuries they suffered as a result of the negligent operation of an automobile owned by defendant. In its answer, defendant admitted ownership of the vehicle and negligence on the part of the driver thereof, but denied that the driver was its agent acting within the scope of his authority at the time of the accident. Judgment was entered on a jury verdict in favor of plaintiffs. Defendant appeals, raising only one question for our consideration: Did the trial court err in submitting to the jury the issue whether the driver was acting within the scope of his employment at the time he caused the accident?

The evidence showed that, at about 7:30 p. m. on Saturday, December 20, 1952, respondents were walking across west Mercer street at the intersection of First avenue west in Seattle. An automobile which had been proceeding on west Mercer street had stopped at the crosswalk, waiting for them to pass. Appellant's automobile, driven by F. Richmond Smith, Jr., ran into the rear of the waiting automobile, causing it to strike and injure respondents. At the time of the accident, Mr. Smith was president of appellant corporation and manager of its Seattle plant. With him in the car was C. R. Dawson, then manager of appellant's Tacoma plant. Both Mr. Smith and Mr. Dawson died before the case came to trial. Neither party at the trial was able to produce

direct evidence showing whether or not Mr. Smith was on company business at the time of the accident.

In deciding the issue before us, we are governed by the fundamental rules enunciated in the leading case of *Bradley v. S. L. Savidge, Inc.*, 13 Wn. (2d) 28, 123 P. (2d) 780 (1942). These are as follows:

(1) Where it is admitted or proved that the defendant owned the offending vehicle in a motor vehicle accident, it is presumed that the driver thereof was the defendant's agent or servant and that he was acting within the scope of his authority at the time of the accident.

(2) This presumption does not have the force of evidence; that is, it does not shift the burden of proof from plaintiff to defendant, but simply casts upon the defendant the burden of going forward with rebuttal evidence.

(3) The defendant may overcome the presumption by the testimony of either interested or disinterested witnesses, provided that their testimony is uncontradicted, unimpeached, clear and convincing.

(4) Where the defendant introduces evidence of this degree and character, the presumption disappears from the case and the defendant is entitled to a directed verdict, in the absence of countervailing evidence produced by the plaintiff.

(5) If the defendant's evidence does not attain the degree and character required for a directed verdict, the case should be submitted to the jury to be decided by it on all the evidence then before the court.

These rules have been followed in a number of later cases. See *Carlson v. Wolski*, 20 Wn. (2d) 323, 147 P. (2d) 291 (1944); *Davis v. Browne*, 20 Wn. (2d) 219, 147 P. (2d) 263 (1944); *Pickering v. Hanson*, 28 Wn. (2d) 603, 183 P. (2d) 487 (1947); *Nawrocki v. Cole*, 41 Wn. (2d) 474, 249 P. (2d) 969, 35 A. L. R. (2d) 799 (1952); *Barnett v. Inland Motor Freight*, 44 Wn. (2d) 619, 269 P. (2d) 592 (1954).

In attempting to rebut the presumption of agency, appellant's principal witness was the widow of the deceased driver. Although much of Mrs. Smith's testimony was clearly hearsay, we may consider it because no proper

objection was made to it. *Merritt v. Department of Labor & Industries*, 41 Wn. (2d) 633, 251 P. (2d) 158 (1952). She testified that on the day of the accident Mr. Smith stayed home all morning and left at about one o'clock p. m. for a luncheon at the Horsebreeders' Club. The luncheon was "purely a social invitational affair." To the best of her knowledge, Mr. Smith did not know that he would encounter Mr. Dawson, the Tacoma manager, at the luncheon. As far as she knew, Mr. Smith did not go to the Coca Cola plant that day. He had planned to be home for dinner and to take her to a basketball game at the University of Washington that evening. However, since their home was in Laurelhurst and the accident occurred at the base of Queen Anne Hill at 7:30 p. m., he would not have had time to dine at home and drive with his wife to the pavilion before the start of the game. On previous occasions, he had sometimes come home late when other executives of the company were in town.

Other testimony showed that Mr. Smith had full-time possession of the car involved and was entitled to use it for his own as well as for company purposes, and that the Seattle plant of appellant did not operate on Saturday, December 20th, the day of the accident. Respondents adduced evidence showing that Mr. Smith's duties as corporation president included entertaining business associates; that this duty was not limited to working hours; that such entertainment expenses were paid by the company; and that the situs of the accident was not on any reasonably direct route between the Horsebreeders' Club in Ballard and the Smith home in Laurelhurst.

We cannot say that the evidence tending to show that Mr. Smith was not an agent acting within the scope of his authority at the time of the accident was "uncontradicted, unimpeached, clear and convincing." There was, in fact, no evidence at all of what he was doing with the automobile at that time. His wife last saw him at about one o'clock p. m., roughly six hours before the accident occurred. It was then her impression that he was going to a

social luncheon and would return home in time to have dinner and take her to the basketball game. However, there is no evidence that such was his intention at the time of the accident. The circumstances indicate, if anything, that it was not. He was riding with another executive of the company and was not on a direct route to his home from the club where the luncheon had been given. Since his duties for the corporation included entertaining visiting executives and other business associates, the evidence, as a whole, was consistent with the theory that he was on company business when the accident occurred. There was certainly no "clear and convincing" proof that he was not.

It follows that, under the rule of the *Bradley* case, *supra*, the trial court properly concluded that appellant's evidence fell short of the standard required for a directed verdict, and, therefore, properly submitted the issue to the jury. Its verdict determined these issues of fact and the trial court correctly entered its judgment thereon.

The judgment is affirmed.

HILL, C. J., SCHWELLENBACH, ROSELLINI, and FOSTER, JJ., concur.